[Cite as *State v. Daniel*, 2014-Ohio-4274.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. CT2014-0018 |
| TIMOTHY DANIEL | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:  Appeal from the Muskingum County
               Common Pleas Court, Case No.
               CR2013-0251

JUDGMENT:          Affirmed in part; Reversed in part and
               Remanded

DATE OF JUDGMENT ENTRY:   September 25, 2014

APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

ROBERT L. SMITH        DAVID A. SAMS
Assistant Prosecuting Attorney   Box 40
27 North Fifth Street       W. Jefferson, Ohio 43162
Zanesville, Ohio 43701

*Hoffman, P.J.*

{¶1} Defendant-appellant Timothy Daniel appeals his conviction and sentence entered by the Muskingum County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} In the morning hours of October 31, 2013, Charles Hooper stopped at Burger King on Maysville Avenue in Zanesville after his evening shift as a security guard. Mr. Hooper was a regular patron of the restaurant, affectionately referred to as "The Tender Grill Guy."

{¶3} Darlene Bender was also in the restaurant during the morning hours of October 31, 2013 at the time Mr. Hooper arrived. Ms. Bender sought refuge in the restaurant from Appellant, her boyfriend whom had been on a two-day binge of substance abuse and violence.

{¶4} Upon learning Darlene Bender was at the Burger King restaurant, Appellant immediately proceeded to the restaurant to retrieve car and house keys Bender had in her possession. Neither Appellant, nor Darlene Bender, knew Charles Hooper.

{¶5} Upon his arrival at the restaurant, Appellant proceeded directly to Ms. Bender, who was seated in a booth near Mr. Hooper. Appellant asked Ms. Bender for the keys, which she eventually turned over. Appellant started to leave the restaurant, but as he approached the door, Appellant realized he did not have all of the keys, made a vile gesture to Ms. Bender and returned to confront her in an agitated state. Appellant stood at the end of the booth, and profanely berated Ms. Bender with increasing

volume.    Upon hearing Appellant's statements, Mr. Hooper rebuked Appellant. Appellant then mocked Mr. Hooper, stating, "Who's this dude, he ain't going to do shit." Appellant then slammed his fist onto the table hard enough for a store employee in the rear of the restaurant to hear.  Mr. Hooper then said, "Hey, that's enough."  Appellant responded, "What are you going to do about it, old man?"  Mr. Hooper proceeded to get out of his booth, approaching Appellant with both hands at his sides.

{¶6}    Appellant, a small time drug dealer, carried a laser-sighted .40 caliber pistol on his person.  Appellant pulled the firearm from his pocket with his right hand. Appellant hit Mr. Hooper across the right side of his face with the firearm in a backhanded motion. Appellant then brought the gun in front of Mr. Hooper's forehead, above his right eyebrow, pulling the trigger and shooting him point blank in the head, killing him.

{¶7}    Appellant took a step back, pulled his hooded sweatshirt over his head and walked out of the restaurant.

{¶8}    Appellant was apprehended in in Muskingum County and indicted on one count of aggravated murder, having a weapon while under disability, felonious assault, carrying a concealed weapon, and improper handling of firearm.

{¶9}    Appellant waived counsel, and elected to represent himself pro se. Following a jury trial, Appellant was convicted of all of the charges except having weapons while under disability, having waived his right to a jury on the charge.  The trial court then found Appellant guilty of having weapons while under disability.  The trial court sentenced Appellant to a stated prison term of life in prison on the aggravated murder, without the possibility of parole; a mandatory term of three years on the firearm

specification; a stated prison term of three years on the having weapons while under disability charge; a stated prison term of eight years for the felonious assault charge; a mandatory three year term for the firearm specification; a stated prison term of eighteen months on the carrying a concealed weapon; and eighteen months on the improper handling of a firearm charge. The trial court ordered the firearm charges in counts two, four and five to run concurrently. The court further ordered the felonious assault charge with the firearm specifications, run consecutively to the lifetime sentence on the aggravated murder charge.

{¶10} Appellant appeals, assigning as error:

{¶11} "I. THE DEFENDANT-APPELLANT'S CONVICTION FOR AGGRAVATED MURDER IS BASED ON INSUFFICIENT EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS (id).

{¶12} "II. THE DEFENDANT-APPELLANT WAS SENTENCED TO CONSECUTIVE TERMS FOR AGGRAVATED MURDER AND FELONIOUS ASSAULT, WITH ACCOMPANYING GUN SPECIFICATIONS, CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶13} "III. THE DEFENDANT-APPELLANT'S WAIVER OF COUNSEL WAS UNKNOWING AND UNINTELLIGENT, AND THUS INVOLUNTARY, CONTRARY TO THE STATE AND FEDERAL CONSTITUTIONS (id)."

{¶14} Appellant maintains his conviction for aggravated murder is against the sufficiency of the evidence as the State failed to prove prior calculation and design in causing the death of Charles Hooper.

**{¶15}** In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter,* 72 Ohio St.3d 545, 1995–Ohio–104, 651 N.E.2d 965.

**{¶16}** Ohio Revised Code Section 2903.01 states,

**{¶17}** "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."

**{¶18}** The Ohio Supreme Court has provided the following factors to consider in determining whether prior calculation and design were proven:

**{¶19}** "(1) Did the accused and the victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost spontaneous eruption of events?"

**{¶20}** *State v. Taylor,* 78 Ohio St.3d 15, 19, 1997–Ohio–243, 676 N.E.2d 82.

**{¶21}** We find the State did not set forth sufficient evidence of prior calculation and design. The parties concede Appellant and Mr. Hooper did not know each other. Rather, Appellant was involved in an argument with Ms. Bender, and Mr. Hooper, a stranger, attempted to intervene. There was no prior animosity between Appellant and Mr. Hooper. Further, there is no evidence Appellant gave thought or preparation to choosing the murder weapon or the site. Appellant came to the restaurant solely

because Ms. Bender was at the restaurant. Further, Appellant had the gun on his person on a regular basis incidental to his involvement in the selling of drugs. The mere fact Appellant had a gun on his person does not indicate a calculated scheme to kill Hooper. Finally, the evidence demonstrates the act was a spontaneous eruption of events occurring over a very short time period; rather than a drawn out act. We find, insufficient evidence was presented to support Appellant's conviction for aggravated murder.

{¶22} The first assignment of error is sustained, and we hereby rendered judgment of conviction as to murder, in violation of R.C. 2903.02(A).

II.

{¶23} In the second assignment of error, Appellant maintains the trial court erred in imposing a sentence for aggravated murder and felonious assault, under R.C. 2903.11(A)(2) as the charges are allied offenses of similar import.

{¶24} In light of our analysis and disposition of Appellant's first assigned error, we find Appellant's second assignment of error should be analyzed relative to R.C. 2903.02(A), murder, a lesser included offense of aggravated murder. The statute reads,

{¶25} "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

{¶26} R.C. 2903.11(A)(2) defines felonious assault,

{¶27} "(A) No person shall knowingly do either of the following:

{¶28} "(1) Cause serious physical harm to another or to another's unborn;"

**{¶29}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court set forth the factors to consider in determining whether offenses are allied offenses of similar import,

**{¶30}** "Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

**{¶31}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.' [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶32}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

**{¶33}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶34} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."

{¶35} Here, Appellant was charged with felonious assault for striking Mr. Hooper with his gun in a backhanded fashion.  The murder charge relates to Appellant's separately bringing the gun to Hooper's forehead and pulling the trigger, shooting him, point blank in the head.  Accordingly, we find the charges arise from separate conduct, and also demonstrate a separate animus.  The trial court did not err in finding, under the facts as they arise in this case, the charges of felonious assault and murder, are not allied offenses of similar import.

{¶36} The second assignment of error is overruled.

III.

{¶37} In the third assigned error, Appellant argues his waiver of counsel was unknowing and unintelligent; thus, involuntary.  However, Appellant merely restates his arguments relative to the State's failure to demonstrate prior calculation and design, and the trial court's err in sentencing him to consecutive sentences.

{¶38} Initially, we note, the trial court appointed counsel to represent Appellant at trial.  Attorney Jerry McHenry appeared at trial on behalf of Appellant.  The record indicates he advised Appellant as to his waiver of a jury trial on the weapons charge.  In addition, the record also indicates Appellant had previously represented himself on a murder charge, and was successful. Tr. at p. 10. Appellant agreed Attorney McHenry would conduct the voir dire and he would "do the rest of the trial." Tr. at p. 10-11.

Appellant indicated an understanding with the trial court, Attorney McHenry would assist Appellant in the trial. The following exchange occurred on the record,

**{¶39}** "THE COURT: Now, I will have him there at the table the whole time. If there's any questions you need to have answered, he can answer that for you. But normally he would not be able to participate in any part of the trial, but the State of Ohio does not oppose, and I would not oppose it if you wanted him to do the voir dire part of the trial.

**{¶40}** "MR. DANIEL: Yeah. I mean, as long as he does what I say, yeah.

**{¶41}** "THE COURT: Well, he'll do what he's allowed to do and follow your instructions, but he will not break his rules that he can't break if you ask if you understand what I'm trying to say. If you ask him to do something that he feels he's not allowed to do, he will indicate that to you.

**{¶42}** "MR. MCHENRY: Your Honor, if we might have just a minute to confer.

**{¶43}** "THE COURT: Yes.

**{¶44}** "MR. DANIEL: Your Honor, I think I'll do voir dire, but I would like to have him as assistant counsel.

**{¶45}** "THE COURT: He will still be there to assist you. I still have other things I need to go over with you in representing yourself.

**{¶46}** "MR. DANIEL: Okay.

**{¶47}** "THE COURT: First of all, it's told to all attorneys that those that represent themselves, they have a fool for a client.

**{¶48}** "MR. DANIEL: I've heard that before.

**{¶49}** "THE COURT: I would assume you probably have.  But you've got to understand, you obviously have been successful at this before, but that still doesn't mean you wouldn't necessarily do so in this case.  It also means that any mistakes that you might make are not appealable issues because you're waiving your right to have an attorney, but you could appeal if he or she made mistakes.

**{¶50}** "MR. DANIEL: I understand that my right to effective assistance of counsel has been waived.

**{¶51}** "THE COURT: I'm just required to go over it on the record to make sure that you understand all these things that you are giving up.

**{¶52}** "MR. DANIEL: Yes, sir.

**{¶53}** "THE COURT: Because no matter what happens, if there's an appeal on the case, it's the record that the court of appeals will look at, and they need to know that you do you understand.  I'm pretty sure that you do, and it's been indicated by Mr. McHenry that you do, but I just want to make sure that you state the same on the record.

**{¶54}** "MR. DANIEL: Yes, sir."

**{¶55}** Tr. at 11-13.

**{¶56}** The trial court engaged in a lengthy colloquy with Appellant relative to the waiver of counsel.  In addition, the court appointed counsel to assist Appellant in his own defense.  Accordingly, Appellant's waiver of counsel was knowing, voluntary and intelligent.

**{¶57}** Accordingly, Appellant's third assigned error is overruled.

**{¶58}** Appellant's conviction in the Muskingum County Court of Common Pleas on one count of aggravated murder is reversed, and judgment of conviction is entered as to murder, in violation of R.C. 2903.02(A). The matter is remanded for resentencing. The trial court's decision aggravated murder [murder] and felonious assault are not allied offenses of similar import is affirmed.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur